# JEANGUENIN & WEBER

ADVOKATURBÜRO • ÉTUDE D'AVOCATS • MEDIATION

Daniel Jeanguenin
Avocat
CCP 30-430258-0
Tel: +41 32 322 30 05
jeanguenin@jwlaw.ch

Oliver Weber
Fürsprecher, Mediator SAV
PC 60-719874-7
Tel: +41 32 322 68 13
weber@jwlaw.ch

Murtenstrasse 28, rue de Morat
Postfach 635, case postale
CH-2501 Biel-Bienne
Telefax +41 32 322 68 04

United States District Court
District of Connecticut
FILED AT   NEW HAVEN
August 25, 2017
Roberta D. Tabora, Clerk
By _____
Deputy Clerk

## MEMORADUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

for

**Dr. Andreas Gerber**, Bassbeltweg 26, CH-2542 Pieterlen, Switzerland

represented by Attorney Oliver Weber, Murtenstrasse 28, P. O. Box 635, CH-2501 Biel, Switzerland

**Defendant**

vs

**Paul L. Hallingby**, 31 Kings Hill Road, Sharon, CT 06069, USA
represented by Attorney Jonathan M. Freiman, Wiggin & Dana, 265 Church Street P. O. Box 1832, New Haven, CT 06508-1832, USA

**Plaintiff**

regarding civil case number 3:17-CV-00975-JBA and regarding stolen Ferrari 250 GT, Spider, Series 1, 1957, VIN 0799GT (hereafter called "Ferrari")

submitted to United States District Court, District of Connecticut, Judge Janet Bond Arterton, Richard C. Lee U. S. Courthouse, 141 Church Street, New Haven, CT 06510, USA

I. **Prayer / Requests to the Court**

1. The Court should consider itself not competent in the civil case 3:17-CV-00975.

In case the Court does consider itself competent, Gerber <u>requests following</u>:

2. Hallingby shall be obliged by the Court to notify his civil action to the defendant in accordance with the Den Hague Convention of November 15, 1965.
3. Hallingby shall be obliged by the Court to have his civil action professionally translated into satisfactory and understandable German.
4. The Court should dismiss Hallingby's complaint due to lack of legitimate interest in the proceedings.
5. The Court should dismiss Hallingby's claim for a Declaratory Judgment against Dr. Gerber declaring that any claim he has to ownership of the Ferrari is barred by the Statue of Limitations.
6. The Court should dismiss Hallingby's claim for a Declaratory Judgment against Dr. Gerber that any claim he has to ownership of the Ferrari is barred by Laches.
7. The Court should dismiss Hallingby's claim for a Declaratory Judgment against Dr. Gerber that any claim he has to ownership of the Ferrari is barred by the Spanish Judgments, as described in the action.
8. The Court should dismiss Hallingby's claim for a Declaratory Judgment against Dr. Gerber that he has no right, title or interest in the Ferrari.
9. The Court should dismiss Hallingby's claim for a Declaratory Judgment against Dr. Gerber declaring that Dr. Gerber has engaged in a pattern of conduct constituting tortious interference with prospective business relationships between Mr. Hallingby and prospective buyers of the Ferrari, and an injunction enjoining him and those acting in concert with him from engaging in such conduct.
10. The Court should dismiss Hallingby's claim for damages against Dr. Gerber, including punitive damages for intentional interference with prospective business relations.
11. The Court should dismiss Hallingby's claim for a Judgment quieting title to the Ferrari in Hallingby against all Defendants and the World.
12. The Court should dismiss any other claim of Hallingby for a Declaratory Judgment against Dr. Gerber.
13. The Court should dismiss any other claim of Hallingby for any order or for any entitlement against Dr. Gerber.
14. The Court should dismiss Hallingby's claim for a Summary Judgment.

15. The Court should dismiss any other claim of Hallingby against Dr. Gerber not mentioned above.

## II. Preliminary remarks

All of Hallingby's allegations in his complaint and exhibits are strongly disputed. Gerber especially contests how Hallingby presents the outcome of the criminal procedure against him (conducted by the Connecticut State Police for larceny). Gerber strongly disputes how Hallingby presents the Spanish Judgments rendered after the theft of the Ferrari. The way in which Hallingby presents the circumstances in Spain (regarding the theft of the Ferrari) is false, misleading and manipulative. Gerber strongly contests Hallingby's wrong allegation according to which Gerber supposedly harasses Hallingby and disturbs Hallingby's business relations.

If not explicitly presented otherwise in this document and in the attached exhibits, all of Hallingby's allegations in his complaint, exhibits and future documents of Hallingby are strongly disputed by Gerber.

## III. Remarks regarding the procedure, the competence of the court and the lack of legitimate interest in the proceedings of the plaintiff

1. By filing this motion, the defendant respects the deadline of 21 days according to US Federal Law.

2. The undersigning attorney is admitted to the bar of the Canton of Berne, Switzerland. The list of all admitted attorneys in the Canton of Berne is public and can be seen at this link:
http://www.justice.be.ch/justice/de/index/justiz/organisation/anwaltsaufsicht/anwaltsregister.assetref/dam/documents/Justice/OG/de/Anwaltsaufsicht/eanr-publication-lawyer.pdf.

The undersigning attorney is legitimated to legally represent the defendant, Dr. Andreas Gerber. The empowerment of Dr. Gerber in favor of the undersigning Attorney is attached in exhibit 1.

3. As required by the court, Gerber files an affidavit in exhibit 2 (sworn, notarized, translated into English and including Den Hague Apostil according to the convention of October 5, 1961), confirming that his Ferrari car, 250 GT, Series 1, Spider, VIN 0799GT, was stolen from a warehouse in Marbella, Spain, on July 7, 1993.

4. The Connecticut District Court is not competent for the present lawsuit. Gerber therefore contests the competence of the Connecticut District Court. According to Article 30, paragraph 2, of the Swiss constitution, any civil case must be decided by a court with the jurisdiction in the domicile in which the defended <u>resides</u> (see exhibit 3). This rule also applies for the whole European Union and can be found in Article 2 of the Lugano Convention (see exhibit 4). According to Art. 2 of the Lugano Convention *all persons domiciled in a State bound by this Convention shall, whatever their nationally, be sued in the courts of that State*. Hallingby's complaint and choice of court violates Gerbers constitutional rights and violates the Lugano Convention, which was ratified not only by all countries of the European Union, but also by Switzerland. Hallingby should have chosen <u>the Swiss court at the domicile of Gerber</u>.

5. Because Hallingby violates the Lugano Convention and the Swiss Constitution, <u>he will never succeed in having any US judgment recognized and enforced in the European Union and in Switzerland</u> (see Art. 33 – 52 of the Lugano Convention, in exhibit 4). Hallingby's claim to have the criminal history of the Ferrari whitewashed in the whole world is legally impossible and will never prevail in any European country. Most potential buyers of the Ferrari and most auction houses have their domicile, their headquarters and legal departments respectively in Europe. Such potential buyers and auction houses in Europe will not rely on and will not respect a possible judgment of a non-competent US Court. Furthermore, several potential buyers of the Ferrari contacted the undersigning attorney and asked for information about the car. These potential buyers received relevant documents from Swiss Police, Connecticut State Police and Interpol about the theft of the car. It is obvious that such potential buyers will never buy a stolen car, as documented in various documents of several Police departments. Hence, Hallingby's complaint, filed at Connecticut District Court, is <u>not qualified</u> to clear the title and the criminal history of the stolen Ferrari. For that reason, Hallingby has <u>no legitimate interest in this proceeding</u>; his complaint is therefore nothing but an abuse of the process of the court. Consequently, Gerber requests the court to dismiss Hallingby's claims.

6. Gerber bought the Ferrari together with his partner Bernhard Friedli-Mühlenen in 1989. With respect to this partnership, Gerber and Friedli signed a partnership agreement (see exhibit 5). They bought the car for 1.7 Million Swiss Francs from Mr. Andreas Zenari of the company Elite Diffusion in Fräschels, Switzerland (see exhibit 6). Gerber's Partner, Mr. Bernhard Friedli died in 1996. In 2007 Mrs. Annerose Friedli-von Mühlenen, as heiresses and legal successor of Mr. Bernhard Friedli, <u>transferred all rights</u> to the Ferrari to Gerber. For that purpose, Mrs. Annerose Friedli-von Mühlenen and Gerber signed an agreement on March 20, 2017 / April 29, 2007 (see exhibit 7). Hallingby is in the possession of this agreement, because it is also part of the criminal file of Connecticut State Police (regarding the criminal investigations against Hallingby for larceny). Nevertheless, he filed his complaint against the children of Mrs. Annerose Friedli-von Mühlenen and B. Friedli, namely Colette Friedli, Guy Friedli and Jacqueline Friedli. Hence, Hallingby addressed his complaint <u>against the wrong parties</u>; no member of the Friedli-family has any legal interest in or right to the Ferrari, as proven in exhibit 7. For this formal error, Hallinby's claim should be dismissed.

7. Hallingby's complaint of June 13, 2017 was sent to Gerber by <u>normal postal service</u>. Furthermore, Hallingby believes that his complaint could be addressed to Colette Friedli through the publication in the Swiss Commerce Journal. This procedure of notification is completely inappropriate and constitutes a severe procedural error. According to the <u>Den Hague Convention of November 15, 1965</u> (see exhibit 8), which was ratified by the USA and Switzerland, the plaintiff is obliged to address his complaint to the US Federal Department of Justice which then transfers those documents to the Swiss Federal Department of Justice. The latter Swiss authority is the <u>only competent authority</u> with the right to notify Hallingby's complaint to Gerber. By sending the complaint directly to Gerber by postal mail, Hallingby violated the Den Hague Convention of November 15, 1965 as well as the sovereignty of the Swiss State. Hence, this notification is illegal and void. Hallingby's complaint must be dismissed for not respecting the Den Hague Convention of November 15, 1965.

8. Hallingby arranged a translation of his complaint into German. This translation is very poor, despite the notarized statements, according to which the translator confirms, having done the translations to the best of his knowledge. The translation was done word by word, regardless of the meaning of the sentences. Many sentences are incomprehensible and unusual. The translation looks like an automatic translation using a Google function. About 30 – 40 percent of the translations cannot be understood. Ger-

ber does not speak English. Furthermore, English is not an official language in Switzerland. Hallingby's complaint must be dismissed for the lack of a correct translation into German. Hence, Hallingby must be obliged by the court, to have the translation of the complaint from English into German redone professionally.

9. Gerber is a medical doctor with his own practice in Switzerland. He will probably not be able to appear personally in Connecticut District Court due to his professional obligations towards his patients. Nevertheless, and despite the fact that Connecticut District Court is not competent in the present case, Gerber will be cooperative and will provide further documents to the court at a later time.

## IV. Statements regarding the plaintiff's complaint of June 13, 2017

### 1. Transportation of the Ferrari to Spain

As mentioned above, Gerber bought the Ferrari together with his partner Bernhard Friedli in 1989. In 1991 the Ferrari of Gerber/Friedli was transported to Spain (Marbella) with the purpose of selling the car. The Ferrari of Gerber/Friedli was transported together with three other Ferraris in the sole ownership of Friedli.

In Marbella, Gerber/Friedli became the victims of organized crime. All four Ferraris (including Ferrari VIN 0799GT) were stolen on July 7, 1993 from a warehouse of the bogus company called "Motorauto Marbella". The car was then transported to Lisbon and from Lisbon shipped to New Jersey USA via Antwerp.

Friedli immediately filed various criminal complaints in Spain and Switzerland. Interpol Madrid and Lisbon, as well as Interpol Berne became involved, as verified by Connecticut State Police (see exhibit 13, Arrest Warrant Application against Hallingby, paragraph 81 – 82)

The details of the happenings between 1991 until the theft in 1993, as well as the desperate attempts of Bernhard Friedli, who was in Spain, to stop the thief and the criminal organization with Spanish law enforcement are described in two detailed reports called

"Statement of Facts, episode 1, 1991 – 1994" and Statement of Facts, episode 2, 1995 – 1999" and proven in 102 attachments to those two reports (see exhibit 9, 10 and 11). All these documents were sent to Connecticut State Police in 2008.

2. **Hallingby's allegations regarding the events in Spain**

Hallingby's allegations regarding the loss of the Ferrari by Gerber, respectively regarding the theft on July 7, 1993, are wrong and manipulative. Hallingby's history of the Ferrari is also completely inaccurate. Hallingby mentions the bogus company called "*Motorauto Marbella*" as *"buyer"* of the Ferrari, which is false and misleading. True is, that *"Motorauto Marbella"* was a bogus company under the control of the Italian Mafia, which shut down just one day after the theft of the Ferrari on July 7, 1993 in Marbella, as described and proven in detail in exhibit 9 ("Statement of Facts, phase one, 1991 – 1993"). A bogus company, as well as a thief, can never acquire ownership of a stolen car.

Gerber files a professional and complete history of the Ferrari in exhibit 12, created by the probably most renowned and internationally known Ferrari expert, Mr. Marcel Massini.

3. **Involved Police Authorities / International search for Ferrari 0799GT**

In his complaint, Hallingby does not devote a single word to the number of police authorities involved in investigating the theft of the Ferrari (and the crime of larceny, most probably committed by Hallingby).

In order to investigate the crime(s) regarding the Ferrari 0799GT following police authorities are/were involved:

- Cantonal Police of Berne (Switzerland)
- Federal Police of Switzerland
- Interpol Office in Berne, Switzerland
- Spanish Police
- Interpol Madrid, Spain
- Interpol Lisbon, Portugal
- Interpol Washington, USA
- Connecticut State Police

None of the above mentioned police authorities ever had any doubt about the fact, that Ferrari 0799GT is a stolen car. The only question Connecticut State Police raised was, whether Hallingby knew about the theft of the Ferrari when he bought and possessed it and if he committed the crime larceny. <u>Connecticut State Police affirmed this question and is convinced that Hallingby committed the crime of larceny</u> (see exhibit 13, Arrest Warrant Application against Hallingby, paragraph 84 - 85).

Since so many (serious and professional) police departments investigated the theft of the Ferrari, it is simply outrageous and absurd to allege in Connecticut District Court, that Ferrari 0799Gt is not a stolen car.

The following police documents prove the international investigation regarding the theft (and the crime of larceny) regarding Ferrari 0799GT:

- Arrest Warrant Application of Connecticut State Police, against Hallingby (see exhibit 13)
- Warrant for Seizure of Connecticut State Police (which was executed by Connecticut State Police; see exhibit 14)
- Complete criminal file of Connecticut State Police concerning the investigations against Paul Hallingby's for larceny; total 1177 pages (handed over as a CD-Rom, due to its volume; see exhibit 15)
- Interpol Teletype of Interpol Berne and Interpol Washington (see exhibit 16)
- Confirmation of Swiss Police (Cantonal Police of Berne) regarding the national and international search for stolen Ferrari 0799GT (see exhibit 17).

### 4. Criminal complaints of Gerber

Gerber filed a criminal complaint for theft at the Cantonal Police of Berne, Switzerland, in 1995 (see exhibit 18), when realizing that Spanish law enforcement was not working properly due to severe corruption (see hereafter). In 2008, Gerber filed a criminal complaint for larceny (see exhibit 19) when he found out that his Ferrari was illegitimately possessed by Ferrari collectors in the US. Since the theft of the Ferrari is known in the Ferrari community for a long time (see exhibit 21), it is impossible that those US Ferrari

collectors who possess or have possessed the car, would have bought the Ferrari in good faith.

It must be underlined, that Gerber <u>never received any compensation from his insurance</u> (Swiss Mobiliar Insurance Company), which is also informed about the theft of the Ferrari in Spain (see exhibit 20).

5. **Analysis of the history of Ferrari 0799GT by Ferrari expert Marcel Massini**

Marcel Massini is an internationally known and very renowned Ferrari expert, who also counsels law enforcement forces and courts. Most auction houses in the world and most big Ferrari collectors rely on the expertise and database of Marcel Massini. Connecticut State Police contacted Marcel Massini during the criminal investigations against Hallingby. Marcel Massini confirmed in the interrogation of Connecticut State Police, that it has been known in the Ferrari Community since approximately the year **1994** that Ferrari 0799GT was stolen (see exhibit 21, question number 3).

Hallingby knows the analyses of Ferrari expert Marcel Massini, since the interrogation in exhibit 21 is part of the criminal file of Connecticut State Police, which is also in the possession of Hallingby. By not mentioning the analysis of Ferrari Expert Marcel Massini, Hallingby, again demonstrates his misleading manner. Hallingby's character to manipulate facts and to mislead authorities was also asserted by Connecticut State Police (see file note of Connecticut State Police of August 3, 2009 in exhibit 22; also see Arrest Warrant Application against Hallingby, paragraph 84, in exhibit 13).

Furthermore, Connecticut State Police state in paragraph 84 of the Arrest Warrant Application against Hallingby (see exhibit 13), that Hallingby's *"<u>claim of no theft is most strongly refuted</u> by the Interpol Teletype from shortly after the disappearance which lists the four missing Ferrari automobiles, not just the Ferrari bearing VIN 0799GT. The teletype confirms that Interpol viewed the "disappearance" of the vehicles as a theft. The re-entry of the Ferrari bearing VIN 0799GT into the Interpol system was after a later investigation, encouraged by Dr. Gerber, of both Interpol and the Swiss Police who concluded that <u>there was a theft and that the vehicle deserved to be listed as "stolen"</u>.*

### 6. Corruption in Spain

Gerber and Friedli were not successful in Spanish courts due to corruption. It was Friedli, who was leading the interventions in the courts of Marbella and Malaga, Spain. It must also be considered, that all four stolen Ferraris left Spain immediately after the theft on July 7, 1993 while the proceedings in Spanish courts and the interventions of Spanish law enforcement started.

It is not surprising that Hallingby bases his claims on diverse Spanish judgments. He did that in the criminal procedure of Connecticut State Police before. Hallingby knows very well that most of the judges of the court of Marbella and Malaga, Spain, were corrupt in the 1990s. Several of those judges were removed from the bench and had direct links to the criminal organization (so-called "Ramirez-family") which was involved in the theft of the four Ferraris. The judgments Hallingby filed at Connecticut State Police do not meet the requirements of State under the rule of the law. These judgments were expelled by corrupt judges as Connecticut State Police verified and confirmed in the Arrest Warrant Application (see exhibit 13, paragraph 73, 84).Hallingby makes no mention whatsoever about the severe corruption in Malaga and Marbella, Spain in his complaint.

Gerber already handed over a detailed presentation of the corruption among the judges of Marbella and Malaga, Spain, to Connecticut State Police. The same documentation and newspaper articles will be filed in exhibit 23 (structure of the Ramirez Group Family Holding, a criminal organization in Marbella, Spain), exhibit 24 (report on corruption in Spain, inclusive translations of evidence documents from Spanish into English) and exhibit 25 (various Spanish newspaper articles relating to the report on corruption in Marbella, Malaga, Spain)

### 7. Ownership of Gerber regarding the Ferrari

It is not legally possible to lose a title, respectively to lose the ownership of a car due to a lapse of time. No Statute of Limitation can be applied in this case, also due to the lack of good faith of Hallingby and his partners. Contrary to Hallingby's allegation, Gerber's claim to ownership of the Ferrari is not barred by any Statute of Limitations or by Laches. Any Statute of Limitations or Laches (the application of which in this case is strongly contested) would (besides other criteria like the competence of the court and the good faith of the persons involved) require that Gerber knows the location of the car exactly and the identity of the illegitimate possessor(s). The fact is that Gerber does not know where the

car is located. Even Connecticut State Police had difficulties to find out the exact location of the Ferrari since Hallingby did not declare the Ferrari in his tax declaration and in his insurance policy (see exhibit 26). Gerber only knows that the Ferrari is not located in Sharon, Connecticut 06069 anymore. Furthermore, Gerber does not know if Hallingby or Tom Papadopoulos, the alleged partner of Hallingby, or any other person (or business partner of Hallingby) is/are the illegitimate possessor(s) of the Ferrari today. Gerber's claim to ownership of the Ferrari is protected by the property guarantee which is a constitutional right in favor of Gerber and which cannot be barred by any Statute of Limitations or by Laches. Due to the theft, the chain of ownership of the car was interrupted. No person could acquire ownership of the Ferrari since the theft happened in 1993 because Gerber, as sole owner of the car, did not transfer his ownership rights of the Ferrari to any other person. It should be reminded that the Ferrari was imported in the US without any paperwork and without any title in December 1993 (see paragraph 8 hereafter and exhibit 13, paragraph 39, 59, 60 as well as exhibit 27). No European authority would accept any other legal result, because ownership cannot be lost by the lapse of time.

### 8. Import of Ferrari 0799GT into the United States in December 1993

Onofrio "Frank" Triarsi of Classic Coach Ltd., Elisabeth, New Jersey 07202, USA "bought" the stolen Ferrari 0799GT together with the stolen Ferraris VIN 1893GT and VIN 2925GT from the thief (of the four cars) called Pedro Poiares from Lisbon, Portugal.

Onofrio "Frank" Triarsi imported a total of three of the four stolen Ferrari cars through C&K Auto Imports Inc., Leonia, NJ, 07605, USA. The stolen Ferrari cars were shipped and imported **without any paperwork and without any titles**. According to Mr. Michael Sheehan (Symbolic Motor Car Company, SMC, La Jolla, CA, USA) Mr. Onofrio "Frank" Triarsi **did not want to know "certain aspects" of the history of stolen Ferrari 0799GT. Mr. Sheehan stated that the same is true for Mr. Hallingby's friend, Mr. Nicholas Soprano** (Motor Classic & Competition Corp., Bedford Hills, NY, 10507, USA; see exhibit 13, paragraph *39, 59, 60*).

Doron Sauer, the owner of C&K Auto Imports Inc. and **importer** of the stolen Ferraris became nervous because of possessing several Ferrari cars without proper paperwork. On December 20, 1993 he wrote a letter to the Leonia Police Department and informed Detective Grenner about the three suspicious Ferrari cars. This letter was later analyzed by Sergeant Kline of the Western District Major Crime Squad. He came to the conclusion

that **Doron Sauer had "guilty knowledge" of the questionable background of the three Ferrari cars** (see exhibit 13, paragraph 60; exhibit 27, file note of Connecticut State Police from February 11, 2009 and February 19, 2009, including a letter of C & K Auto Imports Inc. of December 20, 1993).

9. **Criminal procedure against Hallingby for larceny**

    Connecticut State Police completed its investigations against Hallingby in August 2009. Connecticut State Police prepared a **warrant to arrest Paul "Barney" Hallingby for the crime of larceny** and came to following conclusion in the Arrest Warrant Application:

    *"Based on the aforementioned facts and circumstances, and the Affiant's training and experience, Probable Cause exists to believe that Paul "Barney" Hallingby DOB: 11-11-46 possessed the 1958 Ferrari bearing VIN 0799GT on September 4th, 2008 and that **he knew the vehicle was stolen**. The vehicle was located in his undocumented garage at his residence located at 32 Kings Hill Road in Sharon, CT. The Affiant respectfully requests the authority **to arrest Paul "Barney" Hallingby DOB: 11-11-46 for the crime of Larceny I** (C.G.S. 53a-122)"*; see exhibit 13, paragraph 85.

    The State Attorney, Mr. Shepack declined the prosecution of Mr. Paul "Barney" Hallingby. The State Attorney believed **Probable Cause existed for the arrest of Mr. Paul "Barney" Hallingby** but was not convinced that there was sufficient admissible evidence to prove Mr. Paul "Barney" Hallingby's guilt beyond reasonable doubt at trial (see exhibit 28, file note of Connecticut State Police from 22. September 2009).

    The fact that the Ferrari was returned to Hallingby does not mean that the latter is the "rightful owner" as Hallingby tries to insinuate in this complaint. The return of the seized Ferrari to Hallingby was the simple consequence of not arresting Hallingby.

10. **Civil proceedings of Hallingby against Cavallino Magazine and Ferrari Market Letter**

    Hallingby filed a civil action at the New York Southern District Court against the Cavallino Magazine (John W. Barnes) and the Ferrari Market Letter (Roush Publications Inc.) for

publishing the advertisements of the Swiss owner of the stolen Ferrari 0799GT. Hallingby wrongly alleged that the advertisements were false and defamatory because they described Ferrari 0799GT as a stolen vehicle (see exhibit 29 and exhibit 30).

In December, 2011 Hallingby realized that he did not have any chance to convince a jury that Roush/Cavallino Magazine/Barnes were guilty of defamation. He offered the defendants to drop the lawsuit, which the latter accepted. The settlement of the parties was finalized in January 2012. The terms of the settlement were confidential. The purpose of this confidentiality is obvious and was to mask Hallingby's defeat. By Court Order of January 5, 2012 the New York Southern District Court dismissed Hallingby's civil action (see exhibit 31).

John W. Barnes (Cavallino Magazine) published a public statement in his magazine, explaining why he and the Roush family did not give in to the lawsuit against Paul "Barney" Hallingby. John W. Barnes confirmed in his "Commento" that <u>Ferrari 0799GT had a long history of being stolen and he explained why he believed the advertisements of the Swiss owner of Ferrari 0799GT to be correct</u> (see exhibit 32).

### 11. Gerber's right to defend his ownership in the Ferrari

Gerber did contact potential buyers of the Ferrari and was contacted by potential buyers of the car. It is Gerber's right to clearly express his interests and property rights in the car in public or to individuals. Gerber will not stop doing so in the future.

### 12. Hallingby's manipulations and suspicious behavior regarding the Ferrari

Hallingby showed manipulative and suspicious behavior on various occasions. This unusual behavior was confirmed by Connecticut State Police. Gerber shows some examples of Hallingby unusual behavior hereafter:

- The investigations of Connecticut State Police revealed that Hallingby did not register the stolen Ferrari 0799GT until August 23, 2007. According to the police records Mr. Paul „Barney" Hallingby never waited for seven years to register any of his other (more than 20) vehicles (see exhibit 13, paragraph 11).

- Connecticut State Police found out, that Hallingby manipulated the vehicle identification number when he registered the stolen Ferrari 0799GT at the department of motor vehicles on August 23, 2007. The registration certificate shows that the VIN of the car was printed as "FER079958" instead of the correct VIN "0799GT". Obviously Hallingby intended to hinder the identification of the stolen Ferrari 0799GT (see exhibit 13, paragraph 11).

- Hallingby fundamentally modified the Ferrari, which is unusual and destroys the authenticity of the car. It is possible that Hallingby modified the Ferrari in order to hinder the identification of the car (see exhibit 33).

- In 2000 or 2001, Onofrio "Frank" Triarsi (who bought the Ferrari from the thief) contacted the importer of the stolen Ferraris, namely Doron Sauer (C&K Auto Imports), and asked the latter for a favor. Onofrio "Frank" Triarsi searched for the paperwork of the three stolen Ferraris (which, of course, did not exist due to the theft). Mr. Triarsi (Hallingby's friend and business partner) advised Mr. Sauer that the **three vehicles were stolen and that Interpol was searching for the cars** (see exhibit 33). Despite this clear information about the theft of the Ferrari, Hallingby bought the car in November 2000 (see exhibit 34, file note of New Jersey State Police from 24. April 2009).

- Hallingby claimed to the Connecticut State Police having checked the title and the history of the Ferrari prior to its purchase. He wrongly alleged having hired FBI agent Ken Crook (together with Scott Rosen) in order to check the history of the stolen Ferrari 0799GT (see exhibit 35, paragraph 6 of Hallingby's affidavit of 29. October 2009). It later turned out, that this alleged history check of the car **did not exist**. In fact, **FBI agent Ken Crook does not know Paul Barney Hallingby and Scott Rosen at all and was never hired by them** as Mr. Crook confirms in an email to the undersigning attorney on March 10, 2010 (see exhibit 36).

The Connecticut District Court is kindly appealed to approve Gerber's requests.

On behalf of Dr. Andreas Gerber

Oliver Weber
Attorney-at-law

Sent by registered mail to Connecticut District Court and to Attorney Jonathan M. Freiman

Attached: 36 Exhibits

2501 Biel, Switzerland, 22. August 2017