# DIRECTORY OF EVIDENCE DOCUMENTS

for the purpose of

## Civil Case, Number 3:17-CV-00975-JBA

## regarding the parties, Paul L Hallingby vs Andreas Gerber

concerning stolen Ferrari 250 GT, Spider, Pinin Farina, Cabriolet, Series 1, 1957/58, VIN 0799GT

submitted to

**United States District Court, District of Connecticut**, Judge Janet Bond Arterton, Richard C. Lee U. S. Courthouse, 141 Church Street, New Haven, CT 06510, USA

and sent to

**Attorney Jonathan M. Freimann** (representing the plaintiff), Wiggin & Dana, 265 Church Street P.O. Box 1832, New Haven, CT 06508-1832, USA

by

**Attorney Oliver Weber** (representing the defendant), Murtenstrasse 28, P. O. Box No. 635, CH-2501 Biel, Switzerland, Email: weber@jwlaw.ch

Biel, Switzerland, 22. August 2017

| | | |
|---|---|---|
| 1. | Empowerment, Dr. Andreas Gerber / Attorney Oliver Weber, March 7, 2008 (including translation) | **Exhibit 1** |
| 2. | Notarized Affidavit, Dr. Andreas Gerber, July 3, 2008, including translation and Den Hague Apostil | **Exhibit 2** |
| 3. | Art. 1 – 31 of the Swiss Constitution | **Exhibit 3** |
| 4. | Lugano Convention (ratified by the EU and Switzerland) | **Exhibit 4** |

| | | |
|---|---|---|
| 5. | Partnership-Agreement between Dr. Andreas Gerber and Bernhard Friedli Agreement, April 27, 1989 | **Exhibit 5** |
| 6. | Confirmation of Andreas Zenari, Elite Diffusion, June 9, 2008 | **Exhibit 6** |
| 7. | Agreement between Dr. A Gerber Friedli and Annerose Friedli-von Mühlenen March 20, 2007 / April 29, 2007 | **Exhibit 7** |
| 8. | Den Hague Convention from 15. November 1965 (ratified Switzerland and the USA) | **Exhibit 8** |
| 9. | Statement of Facts 1991 – 1993 (phase one), the Spanish episode | **Exhibit 9** |
| 10. | Statement of Facts 1994 – 1999 (phase two), procedures in Spain and Portugal | **Exhibit 10** |
| 11. | Attachments to Statement of Facts 1 – 102, including translation of Spanish documents into English | **Exhibit 11** |
| 12. | History of Ferrari VIN 0799GT, by Ferrari Expert Marcel Massini | **Exhibit 12** |
| 13. | Arrest Warrant Application against Hallingby, by Connecticut State Police | **Exhibit 13** |
| 14. | Seizure Warrant of Connecticut State Police, September 4, 2008; request for seizure of Dr. Andreas Gerber from July 9, 2008 (including 41 attachments) | **Exhibit 14** |
| 15. | Criminal file of Connecticut State Police, regarding Paul Hallingby (CD-Rom) | **Exhibit 15** |
| 16. | Interpol Berne and Washington Teletype | **Exhibit 16** |
| 17. | Confirmation of Swiss Police (Cantonal Police of Berne) from December 10, 2008, regarding national and international search for Ferrari 0799GT | **Exhibit 17** |
| 18. | Criminal complaint Dr. Andreas Gerber / Swiss Police, March 20, 1995, for theft | **Exhibit 18** |
| 19. | Criminal complaint Dr. Gerber 2008 / Swiss Police, March 19, 2008, for larceny | **Exhibit 19** |
| 20. | Confirmation of Swiss Mobiliar Insurance Company, September 26, 2007 | **Exhibit 20** |
| 21. | Interrogation of Ferrari Expert Marcel Massini, September 30, 2008, by Connecticut State Police | **Exhibit 21** |

22.  File note of Connecticut State Police, August 3, 2009                                      **Exhibit 22**

23.  Structure of the Ramirez Group Family Holding (a criminal                          **Exhibit 23**
     organization in Marbella, Spain)

24.  Report on corruption in Marbella, Spain, including translations of            **Exhibit 24**
     Spanish evidence documents concerning corruption

25.  Spanish newspaper articles relating to the report on corruption in           **Exhibit 25**
     Marbella, Malaga, Spain

26.  File notes of Connecticut State Police from August 8, 2009; August         **Exhibit 26**
     22, 2009; September 3, 2008; September 11, 2008; including
     documentation of Condon & Skelly Insurance

27.  File note of Connecticut State Police from February 11, 2009 and           **Exhibit 27**
     February 19, 2009, including a letter of C & K Auto Imports Inc. from
     December 20, 1993

28.  File note of Connecticut State Police from September 22, 2009               **Exhibit 28**

29.  Advertisements in Cavallino Magazine (April Mai 2008 edition) and       **Exhibit 29**
     Ferrari Market Letter (March 22, 2008, April 5, 2008) about stolen
     Ferrari 0799GT

30.  Extract from www.justia.com about the lawsuit of Paul Barney                **Exhibit 30**
     Hallingby vs Roush Publications Inc., Cavallino Inc. et al

31.  Dismissal order by the Southern District Court of New York, January     **Exhibit 31**
     5, 2012

32.  Commentary by John W. Barnes, about the lawsuit against Paul            **Exhibit 32**
     Barney Hallingby, Cavallino Magazine, August 1, 2012

33.  Pictures about modification on stolen Ferrari VIN 0799GT by Paul        **Exhibit 33**
     Hallingby in order to hinder the identification of the car

34.  File note of New Jersey State Police from April 27, 2009                          **Exhibit 34**

35.  Hallingby's affidavit from October 29, 2009                                            **Exhibit 35**

36.  Email of retired FBI agent and car expert, Ken Crook, March 10, 2010   **Exhibit 36**

| Exhibit | 1 |

# Empowerment

Dr. Andreas Gerber, Bassbeltweg 26, 2542 Pieterlen

hereafter named the principal, empowers herewith

Attorney Oliver Weber and his substitutes, located at Murtenstrasse 7, Post Office Box 811, 2501 Biel,
member of the Swiss and Bernese Lawyers' Association, with post delivery address at his lawyer's office in Biel,

to represent the principal regarding the case of damage concerning Ferrari 250 GT (1957)

The attorney is empowered to represent the principal in this legal matter and to undertake all necessary measures in his name, including the measures which legally underlie a special empowerment. The attorney protects the interests of the principal according to law and equity and handles the mandate conscientiously; he is committed to loyalty and bound to professional secrecy. Unless otherwise advised by the principal, the attorney is empowered to transfer information via telefax and email.

The principal is obliged to pay the lawyer's fee and the expenses of the attorney according to the provisions of the cantonal and federal law on attorneys. Different written fee agreements are reserved. The principal is obliged, if requested, to disburse sufficient advance to the attorney and to pay further deposits if necessary at a later date.

**All disputes between the principal and the attorney are to be settled in the court of Biel, unless the Bar Association of the Canton of Berne, located at Hochschulstrasse 17, Post Office Box, 3001 Berne, has competent jurisdiction. In case of a dispute, the principal releases the attorney from his obligation of professional secrecy regarding the court procedure or the procedure at the Attorney's Chamber.** A possible request to fix the lawyer's fee can be addressed to the Bar Association of the Canton of Berne.

An identical duplicate of this empowerment has been handed to the principal. The empowerment can be revoked at any time.

Place and date:  Biel, 07.03.2008

_____
The Attorney-at-Law: Oliver Weber

_____
The principal: Dr. Andreas Gerber

Provisions concerning the rights and obligations of attorneys and principals are listed in the following laws:
- Rules of professional conduct of the Bar Association of the Canton of Berne, dated September 18, 1998
- Regulation on lawyers' fees, dated May 17, 2006
- Cantonal Act on Attorneys, dated March 26, 2006
- Federal Act on the Freedom of Movement for Lawyers, dated June 23, 2000
- Swiss Obligation Code, Art. 394 ff.

I, Astrid Ischer-Protzen, born on April 8, 1954, with place of origin in Grossaffoltern / Switzerland, domiciled at Hinterdorf 6 in CH-2565 Jens, Switzerland, translator and English teacher for adults, certified by the University of Cambridge Local Examinations Syndicate / International Examinations, England, state and confirm that this English translation of the original German document, dated July 4, 2007, has been correctly and authentically translated from German into English.

Astrid Ischer-Protzen
Translator / English teacher RSA-CTEFLA, University of Cambridge
Biel, Switzerland, July 3, 2008

I, Daniel Graf, Notary Public in the canton of Berne, Switzerland, hereby officially notarize and legalize the signatures of Dr. Andreas Gerber, born on February 28, 1947, with place of origin in Heimiswil/Switzerland, domiciled at Bassbeltweg 26 in CH-2542 Pieterlen/Switzerland, of Mrs. Astrid Ischer-Protzen, born on April 8, 1954, with place of origin in Grossaffoltern / Switzerland, domiciled at Hinterdorf 6 in CH-2565 Jens, Switzerland and of Attorney Oliver Weber, born on July 17, 1976, with place of origin in Zug / Switzerland, domiciled at Theodor-Kocherstrasse 9 in CH-2502 Biel/Switzerland according to Swiss law and the Den Hague Convention dated 10.05.1961 regarding this translated empowerment, dated and signed July 3, 2008 (original German document, dated and signed July 4, 2007).

Daniel Graf
Notary Public
Biel, Switzerland, July 3, 2008



# VOLLMACHT

Herr Dr. Andreas Gerber, Bassbeltweg 26, 2542 Pieterlen

nachstehend Vollmachtgeber genannt, bevollmächtigt hiermit unter Einräumung des Substitutionsrechtes

Herrn Fürsprecher Oliver Weber, Murtenstrasse 7, Postfach 811, 2501 Biel
Mitglied des Schweizerischen und des Bernischen Anwaltsverbandes, mit Zustellungsdomizil auf seiner Kanzlei in Biel

zur Vertretung in Sachen Schadensfall Ferrari 250 GT (Jg. 1957)

Der Fürsprecher wird ermächtigt, den Vollmachtgeber in dieser Sache zu vertreten und alle dazu erforderlichen Vorkehren, auch solche, wofür das Gesetz eine Spezialvollmacht verlangt, in seinem Namen zu treffen. Der Fürsprecher wahrt die Interessen des Vollmachtgebers nach Recht und Billigkeit und besorgt das ihm Anvertraute gewissenhaft; gleichzeitig verpflichtet er sich zu Treue und Verschwiegenheit. Ohne gegenteilige schriftliche Weisung des Vollmachtgebers ist der Fürsprecher ermächtigt, ihm Mitteilungen mit Telefax und mit E-mail zu übermitteln.

Der Vollmachtgeber verpflichtet sich zur Bezahlung des Honorars und der Auslagen des Fürsprechers nach Massgabe der Bestimmungen des Gesetzes über die Fürsprecher. Abweichende schriftliche Honorarvereinbarungen bleiben vorbehalten. Der Vollmachtgeber verpflichtet sich, dem Fürsprecher auf dessen Verlangen einen angemessenen Vorschuss zu leisten und diesen nötigenfalls zu ergänzen.

**Alle Streitigkeiten zwischen dem Vollmachtgeber und dem Fürsprecher sind, soweit nicht nach Gesetz die Anwaltskammer des Kantons Bern, Hochschulstrasse 17, Postfach, 3001 Bern, zuständig ist, durch das Gericht in Biel zu entscheiden. Für Streitigkeiten zwischen ihm und dem Fürsprecher entbindet der Vollmachtgeber diesen dem Gericht und der Anwaltskammer gegenüber vom Berufsgeheimnis.** Ein allfälliges Begehren um Festsetzung der Honorarforderung ist an die Anwaltskammer des Kantons Bern zu richten.

Ein gleichlautendes Doppel dieser Vollmacht steht zur Verfügung des Vollmachtgebers. Die Vollmacht ist jederzeit widerrufbar.

Ort und Datum:    Biel , 4. 07. 2

Der Fürsprecher:                    Der Vollmachtgeber:

Bestimmungen über Rechte und Pflichten von Fürsprecher und Vollmachtgeber finden sich in folgenden Erlassen:

- Standesregeln des Bernischen Anwaltsverbandes vom 18. September 1998
- Parteikostenverordnung vom 17. Mai 2006 (PKV)
- Kantonales Anwaltsgesetz vom 28. März 2006 (KAG)
- Bundesgesetz vom 23. Juni 2000 über die Freizügigkeit der Anwältinnen und Anwälte (BGFA)
- Schweizerisches Obligationenrecht, Art. 394 ff

**Exhibit** | **2**

## Affidavit – Sworn Statement

**Concerning: Stolen Ferrari 250 GT, Spider, Pinin Farina, Series 1, 1957, VIN 0799GT**

I, Dr. Andreas Gerber, domiciled at Bassbeltweg 26, CH-2542 Pieterlen, Switzerland, born on 28.02.1947, Swiss citizen, swear that the following statement is the whole truth and nothing but the truth:

1. I, Dr. Andreas Gerber, state and swear that I am the only legal and legitimate owner of Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT.

2. I swear that I purchased Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT, from the car dealer Mr. Andreas Zenari, Manager of the company "Elite Diffusion", domiciled at Hauptstrasse, CH-3284 Fräschels in Switzerland on April 27, 1989. The purchase price was CHF 1,700,000.00.

3. I confirm that Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT was transported to Marbella / Spain on my behalf. The purpose of this transport to Spain was to sell the car in Marbella, where I had expected a good market place. For that reason Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT was stored in a warehouse of a garage called "*Motorauto Marbella*". It later turned out that this garage was a bogus company with organized criminals involved.

4. To the best of my knowledge my Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT was stolen on July 7, 1993 from the warehouse of the garage "*Motorauto Marbella*" in Marbella. The Ferrari car was then apparently transported to Lisboa (Portugal) and was later shipped to the USA. In the USA the car was apparently transferred by an Italian called Mr. Gianni Meninno to a Ferrari car dealer in Elisabeth, New Jersey 07202, USA. Mr. Gianni Meninno was a dangerous criminal and member of the Santapaola Mafia clan who died in 2004.

5. Additionally I state that I filed a criminal complaint regarding this theft at the Cantonal Police of Berne, Switzerland, on 03.16.1995, after realizing that the Spanish police was not investigating properly due to corruption. After I had been informed that my Ferrari car was not located in Spain anymore, but probably in the USA, I wanted the Swiss Police, especially Interpol Berne, to continue the investigations. A new criminal complaint regarding the offence "receiving of stolen goods" was filed on 03.19.2008 at the Cantonal Police of Berne, Switzerland, after I was told that my Ferrari car had been illegally "*sold*"/ transferred in the USA.

6. Furthermore I confirm and state that no compensation has ever been paid to me regarding the loss of my Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT.

Place / Date:   Switzerland, City of 2502 Biel, July 3, 2008


Dr. Andreas Gerber, MD, born on February 28, 1947, with place of origin in Heimiswil/Switzerland, domiciled at Bassbeltweg 26 in CH-2542 Pieterlen/Switzerland.


I, Daniel Graf, Notary Public in the Canton of Berne, Switzerland, hereby notarize and legalize the signature and the affidavit of Dr. Andreas Gerber officially according to Swiss law and according to the Den Hague Convention of 10.05.1961.


Daniel Graf, Notary Public



## Affidavit – Sworn Statement

Concerning: Stolen Ferrari 250 GT, Spider, Pinin Farina, Series 1, 1957, VIN 0799GT

I, Dr. Andreas Gerber, domiciled at Bassbeltweg 26, CH-2542 Pieterlen, Switzerland, born on 28.02.1947, Swiss citizen, swear that the following statement is the whole truth and nothing but the truth:

1. I, Dr. Andreas Gerber, state and swear that I am the only legal and legitimate owner of Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT.

2. I swear that I purchased Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT, from the car dealer Mr. Andreas Zenari, Manager of the company "Elite Diffusion", domiciled at Hauptstrasse, CH-3284 Fräschels in Switzerland on April 27, 1989. The purchase price was CHF 1,700,000.00.

3. I confirm that Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT was transported to Marbella / Spain on my behalf. The purpose of this transport to Spain was to sell the car in Marbella, where I had expected a good market place. For that reason Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT was stored in a warehouse of a garage called "*Motorauto Marbella*". It later turned out that this garage was a bogus company with organized criminals involved.

4. To the best of my knowledge my Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT was stolen on July 7, 1993 from the warehouse of the garage "*Motorauto Marbella*" in Marbella. The Ferrari car was then apparently transported to Lisboa (Portugal) and was later shipped to the USA. In the USA the car was apparently transferred by an Italian called Mr. Gianni Meninno to a Ferrari car dealer in Elisabeth, New Jersey 07202, USA. Mr. Gianni Meninno was a dangerous criminal and member of the Santapaola Mafia clan who died in 2004.

5. Additionally I state that I filed a criminal complaint regarding this theft at the Cantonal Police of Berne, Switzerland, on 03.16.1995, after realizing that the Spanish police was not investigating properly due to corruption. After I had been informed that my Ferrari car was not located in Spain anymore, but probably in the USA, I wanted the Swiss Police, especially Interpol Berne, to continue the investigations. A new criminal complaint regarding the offence "receiving of stolen goods" was filed on 03.19.2008 at the Cantonal Police of Berne, Switzerland, after I was told that my Ferrari car had been illegally "*sold*"/ transferred in the USA.

6. Furthermore I confirm and state that no compensation has ever been paid to me regarding the loss of my Ferrari car 250 GT, Spider, Series 1, 1957, VIN 0799GT.

Place / Date:   Switzerland, City of 2502 Biel, July 3, 2008

Dr. Andreas Gerber, MD, born on February 28, 1947, with place of origin in Heimiswil/Switzerland, domiciled at Bassbeltweg 26 in CH-2542 Pieterlen/Switzerland.

I, Daniel Graf, Notary Public in the Canton of Berne, Switzerland, hereby notarize and legalize the signature and the affidavit of Dr. Andreas Gerber officially according to Swiss law and according to the Den Hague Convention of 10.05.1961.

Daniel Graf, Notary Public

# APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country: Swiss Confederation, Canton of Berne

This public document

2. has been signed by _Daniel Graf_

3. acting in the capacity of _Notary_

4. bears the seal/stamp of _Notary's office_ _of the Canton of Berne_

Certified

5. at Berne    6. the _4. 7. 2008_

7. by _Jörg Vogt_

official of the Chancellery of State of the Canton of Berne

8. under number: _2582_

9. Stamp/seal    10. Signature

Tax: CHF _15.—_





| Exhibit | 3 |

English is not an official language of the Swiss Confederation. This translation is provided for information purposes only and has no legal force.

# Federal Constitution
## of the Swiss Confederation

of 18 April 1999 (Status as of 12 February 2017)

Preamble

In the name of Almighty God!

The Swiss People and the Cantons,

mindful of their responsibility towards creation,

resolved to renew their alliance so as to strengthen liberty, democracy, independence and peace in a spirit of solidarity and openness towards the world,

determined to live together with mutual consideration and respect for their diversity,

conscious of their common achievements and their responsibility towards future generations,

and in the knowledge that only those who use their freedom remain free, and that the strength of a people is measured by the well-being of its weakest members,

adopt the following Constitution[1]:

## Title 1        General Provisions

### Art. 1        The Swiss Confederation

The People and the Cantons of Zurich, Bern, Lucerne, Uri, Schwyz, Obwalden and Nidwalden, Glarus, Zug, Fribourg, Solothurn, Basel Stadt and Basel Landschaft, Schaffhausen, Appenzell Ausserrhoden and Appenzell Innerrhoden, St. Gallen, Graubünden, Aargau, Thurgau, Ticino, Vaud, Valais, Neuchâtel, Geneva, and Jura form the Swiss Confederation.

### Art. 2        Aims

[1] The Swiss Confederation shall protect the liberty and rights of the people and safeguard the independence and security of the country.

AS 2007 5225
[1]    Adopted by the popular vote on 18 April 1999 (Federal Decree of 18 Dec. 1998, Federal Council Decree of 11 Aug. 1999; AS 1999 2556; BBl 1997 I 1, 1999 162 5986).

[2] It shall promote the common welfare, sustainable development, internal cohesion and cultural diversity of the country.

[3] It shall ensure the greatest possible equality of opportunity among its citizens.

[4] It is committed to the long term preservation of natural resources and to a just and peaceful international order.

### Art. 3        Cantons

The Cantons are sovereign except to the extent that their sovereignty is limited by the Federal Constitution. They exercise all rights that are not vested in the Confederation.

### Art. 4        National languages

The National Languages are German, French, Italian, and Romansh.

### Art. 5        Rule of law

[1] All activities of the state are based on and limited by law.

[2] State activities must be conducted in the public interest and be proportionate to the ends sought.

[3] State institutions and private persons shall act in good faith.

[4] The Confederation and the Cantons shall respect international law.

### Art. 5a[2]        Subsidiarity

The principle of subsidiarity must be observed in the allocation and performance of state tasks.

### Art. 6        Individual and collective responsibility

All individuals shall take responsibility for themselves and shall, according to their abilities, contribute to achieving the tasks of the state and society.

### Title 2        Fundamental Rights, Citizenship and Social Goals
### Chapter 1        Fundamental Rights

### Art. 7        Human dignity

Human dignity must be respected and protected.

---

[2]    Adopted by the popular vote on 28 Nov. 2004, in force since 1 Jan. 2008 (Federal Council Decree of 3 Oct. 2003, Federal Council Decree of 26 Jan. 2005, Federal Council Decree of 7 Nov. 2007; AS 2007 5765; BBl 2002 2291, 2003 6591, 2005 951).

2

**Art. 8**        Equality before the law

[1] Every person is equal before the law.

[2] No person may be discriminated against, in particular on grounds of origin, race, gender, age, language, social position, way of life, religious, ideological, or political convictions, or because of a physical, mental or psychological disability.

[3] Men and women have equal rights. The law shall ensure their equality, both in law and in practice, most particularly in the family, in education, and in the workplace. Men and women have the right to equal pay for work of equal value.

[4] The law shall provide for the elimination of inequalities that affect persons with disabilities.

**Art. 9**        Protection against arbitrary conduct and principle of good faith

Every person has the right to be treated by state authorities in good faith and in a non-arbitrary manner.

**Art. 10**        Right to life and to personal freedom

[1] Every person has the right to life. The death penalty is prohibited.

[2] Every person has the right to personal liberty and in particular to physical and mental integrity and to freedom of movement.

[3] Torture and any other form of cruel, inhuman or degrading treatment or punishment are prohibited.

**Art. 11**        Protection of children and young people

[1] Children and young people have the right to the special protection of their integrity and to the encouragement of their development.

[2] They may personally exercise their rights to the extent that their power of judgement allows.

**Art. 12**        Right to assistance when in need

Persons in need and unable to provide for themselves have the right to assistance and care, and to the financial means required for a decent standard of living.

**Art. 13**        Right to privacy

[1] Every person has the right to privacy in their private and family life and in their home, and in relation to their mail and telecommunications.

[2] Every person has the right to be protected against the misuse of their personal data.

**Art. 14**        Right to marry and to have a family

The right to marry and to have a family is guaranteed.

**Art. 15**          Freedom of religion and conscience

[1] Freedom of religion and conscience is guaranteed.

[2] Every person has the right to choose freely their religion or their philosophical convictions, and to profess them alone or in community with others.

[3] Every person has the right to join or to belong to a religious community, and to follow religious teachings.

[4] No person may be forced to join or belong to a religious community, to participate in a religious act, or to follow religious teachings.

**Art. 16**          Freedom of expression and of information

[1] Freedom of expression and of information is guaranteed.

[2] Every person has the right freely to form, express, and impart their opinions.

[3] Every person has the right freely to receive information to gather it from generally accessible sources and to disseminate it.

**Art. 17**          Freedom of the media

[1] Freedom of the press, radio and television and of other forms of dissemination of features and information by means of public telecommunications is guaranteed.

[2] Censorship is prohibited.

[3] The protection of sources is guaranteed.

**Art. 18**          Freedom to use any language

The freedom to use any language is guaranteed.

**Art. 19**          Right to basic education

The right to an adequate and free basic education is guaranteed

**Art. 20**          Academic freedom

Freedom of research and teaching is guaranteed.

**Art. 21**          Freedom of artistic expression

Freedom of artistic expression is guaranteed.

**Art. 22**          Freedom of assembly

[1] Freedom of assembly is guaranteed.

[2] Every person has the right to organise meetings and to participate or not to participate in meetings.

Art. 23          Freedom of association

[1] Freedom of association is guaranteed.

[2] Every person has the right to form, join or belong to an association and to partici-
pate in the activities of an association.

[3] No person may be compelled to join or to belong to an association.

Art. 24          Freedom of domicile

[1] Swiss citizens have the right to establish their domicile anywhere in the country.

[2] They have the right to leave or to enter Switzerland.

Art. 25          Protection against expulsion, extradition and deportation

[1] Swiss citizens may not be expelled from Switzerland and may only be extradited to
a foreign authority with their consent.

[2] Refugees may not be deported or extradited to a state in which they will be perse-
cuted.

[3] No person may be deported to a state in which they face the threat of torture or any
other form of cruel or inhumane treatment or punishment.

Art. 26          Guarantee of ownership

[1] The right to own property is guaranteed.

[2] The compulsory purchase of property and any restriction on ownership that is
equivalent to compulsory purchase shall be compensated in full.

Art. 27          Economic freedom

[1] Economic freedom is guaranteed.

[2] Economic freedom includes in particular the freedom to choose an occupation as
well as the freedom to pursue a private economic activity.

Art. 28          Right to form professional associations

[1] Employees, employers and their organisations have the right to join together in
order to protect their interests, to form associations and to join or not to join such
associations.

[2] Disputes must wherever possible be resolved through negotiation or mediation.

[3] Strikes and lock outs are permitted if they relate to employment relations and if
they do not contravene any requirements to preserve peaceful employment relations
or to conduct conciliation proceedings.

[4] The law may prohibit certain categories of person from taking strike action.

### Art. 29       General procedural guarantees

[1] Every person has the right to equal and fair treatment in judicial and administrative proceedings and to have their case decided within a reasonable time.

[2] Each party to a case has the right to be heard.

[3] Any person who does not have sufficient means has the right to free legal advice and assistance unless their case appears to have no prospect of success. If it is necessary in order to safeguard their rights, they also have the right to free legal representation in court.

### Art. 29a[3]       Guarantee of access to the courts

In a legal dispute, every person has the right to have their case determined by a judicial authority. The Confederation and the Cantons may by law preclude the determination by the courts of certain exceptional categories of case.

### Art. 30       Judicial proceedings

[1] Any person whose case falls to be judicially decided has the right to have their case heard by a legally constituted, competent, independent and impartial court. Ad hoc courts are prohibited.

[2] Unless otherwise provided by law, any person against whom civil proceedings have been raised has the right to have their case decided by a court within the jurisdiction in which they reside.

[3] Unless the law provides otherwise, court hearings and the delivery of judgments shall be in public.

### Art. 31       Deprivation of liberty

[1] No person may be deprived of their liberty other than in the circumstances and in the manner provided for by the law.

[2] Any person deprived of their liberty has the right to be notified without delay and in a language they can understand of the reasons for their detention and of their rights. They must be given the opportunity to exercise their rights, in particular, the right to have their next-of-kin informed.

[3] Any person in pre-trial detention has the right to be brought before a court without delay. The court decides whether the person must remain in detention or be released. Any person in pre-trial detention has the right to have their case decided within a reasonable time.

---

[3]   Adopted by the popular vote on 12 March 2000, in force since 1 Jan. 2007 (Federal Decree of 8 Oct. 1999, Federal Council Decree of 17 May 2000, Federal Decree of 8 March 2005; AS 2002 3148, 2006 1059; BBl 1997 I 1, 1999 8633, 2000 2990, 2001 4202).

| Exhibit | 4 |

21.12.2007     EN     Official Journal of the European Union     L 339/3

# CONVENTION

## on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters

### PREAMBLE

THE HIGH CONTRACTING PARTIES TO THIS CONVENTION,

DETERMINED to strengthen in their territories the legal protection of persons therein established,

CONSIDERING that it is necessary for this purpose to determine the international jurisdiction of the courts, to facilitate recognition, and to introduce an expeditious procedure for securing the enforcement of judgments, authentic instruments and court settlements,

AWARE of the links between them, which have been sanctioned in the economic field by the free trade agreements concluded between the European Community and certain States members of the European Free Trade Association,

TAKING INTO ACCOUNT:

— the Brussels Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters, as amended by the Accession Conventions under the successive enlargements of the European Union,

— the Lugano Convention of 16 September 1988 on jurisdiction and the enforcement of judgments in civil and commercial matters, which extends the application of the rules of the 1968 Brussels Convention to certain States members of the European Free Trade Association,

— Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters, which has replaced the abovementioned Brussels Convention,

— the Agreement between the European Community and the Kingdom of Denmark on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters, signed at Brussels on 19 October 2005,

PERSUADED that the extension of the principles laid down in Regulation (EC) No 44/2001 to the Contracting Parties to this instrument will strengthen legal and economic cooperation,

DESIRING to ensure as uniform an interpretation as possible of this instrument,

HAVE in this spirit DECIDED to conclude this Convention, and

HAVE AGREED AS FOLLOWS:

### TITLE I

### SCOPE

### Article 1

1. This Convention shall apply in civil and commercial matters whatever the nature of the court or tribunal. It shall not extend, in particular, to revenue, customs or administrative matters.

2. The Convention shall not apply to:

(a) the status or legal capacity of natural persons, rights in property arising out of a matrimonial relationship, wills and succession;

(b)   bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings;

(c)   social security;

(d)   arbitration.

3.   In this Convention, the term 'State bound by this Convention' shall mean any State that is a Contracting Party to this Convention or a Member State of the European Community. It may also mean the European Community.

TITLE II

JURISDICTION

SECTION 1

**General provisions**

*Article 2*

1.   Subject to the provisions of this Convention, persons domiciled in a State bound by this Convention shall, whatever their nationality, be sued in the courts of that State.

2.   Persons who are not nationals of the State bound by this Convention in which they are domiciled shall be governed by the rules of jurisdiction applicable to nationals of that State.

*Article 3*

1.   Persons domiciled in a State bound by this Convention may be sued in the courts of another State bound by this Convention only by virtue of the rules set out in Sections 2 to 7 of this Title.

2.   In particular the rules of national jurisdiction set out in Annex I shall not be applicable as against them.

*Article 4*

1.   If the defendant is not domiciled in a State bound by this Convention, the jurisdiction of the courts of each State bound by this Convention shall, subject to the provisions of Articles 22 and 23, be determined by the law of that State.

2.   As against such a defendant, any person domiciled in a State bound by this Convention may, whatever his nationality, avail himself in that State of the rules of jurisdiction there in force, and in particular those specified in Annex I, in the same way as the nationals of that State.

SECTION 2

**Special jurisdiction**

*Article 5*

A person domiciled in a State bound by this Convention may, in another State bound by this Convention, be sued:

1.   (a)   in matters relating to a contract, in the courts for the place of performance of the obligation in question;

     (b)   for the purpose of this provision and unless otherwise agreed, the place of performance of the obligation in question shall be:

          —   in the case of the sale of goods, the place in a State bound by this Convention where, under the contract, the goods were delivered or should have been delivered;

— in the case of the provision of services, the place in a State bound by this Convention where, under the contract, the services were provided or should have been provided.

(c)   if (b) does not apply then subparagraph (a) applies;

2.   ~~in matters relating to maintenance:~~

(a)   in the courts for the place where the maintenance creditor is domiciled or habitually resident; or

(b)   in the court which, according to its own law, has jurisdiction to entertain proceedings concerning the status of a person if the matter relating to maintenance is ancillary to those proceedings, unless that jurisdiction is based solely on the nationality of one of the parties; or

(c)   in the court which, according to its own law, has jurisdiction to entertain proceedings concerning parental responsibility, if the matter relating to maintenance is ancillary to those proceedings, unless that jurisdiction is based solely on the nationality of one of the parties;

3.   in matters relating to tort, *delict* or *quasi-delict*, in the courts for the place where the harmful event occurred or may occur;

4.   as regards a civil claim for damages or restitution which is based on an act giving rise to criminal proceedings, in the court seised of those proceedings, to the extent that that court has jurisdiction under its own law to entertain civil proceedings;

5.   as regards a dispute arising out of the operations of a branch, agency or other establishment, in the courts for the place in which the branch, agency or other establishment is situated;

6.   as settlor, trustee or beneficiary of a trust created by the operation of a statute, or by a written instrument, or created orally and evidenced in writing, in the courts of the State bound by this Convention in which the trust is domiciled;

7.   as regards a dispute concerning the payment of remuneration claimed in respect of the salvage of a cargo or freight, in the court under the authority of which the cargo or freight in question:

(a)   has been arrested to secure such payment; or

(b)   could have been so arrested, but bail or other security has been given;

provided that this provision shall apply only if it is claimed that the defendant has an interest in the cargo or freight or had such an interest at the time of salvage.

*Article 6*

A person domiciled in a State bound by this Convention may also be sued:

1.   where he is one of a number of defendants, in the courts for the place where any one of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings;

L 339/6          EN          Official Journal of the European Union          21.12.2007

2.  as a third party in an action on a warranty or guarantee, or in any other third party proceedings, in the court seised of the original proceedings, unless these were instituted solely with the object of removing him from the jurisdiction of the court which would be competent in his case;

3.  on a counter-claim arising from the same contract or facts on which the original claim was based, in the court in which the original claim is pending;

4.  in matters relating to a contract, if the action may be combined with an action against the same defendant in matters relating to rights *in rem* in immovable property, in the court of the State bound by this Convention in which the property is situated.

### Article 7

Where by virtue of this Convention a court of a State bound by this Convention has jurisdiction in actions relating to liability from the use or operation of a ship, that court, or any other court substituted for this purpose by the internal law of that State, shall also have jurisdiction over claims for limitation of such liability.

### SECTION 3

### Jurisdiction in matters relating to insurance

### Article 8

In matters relating to insurance, jurisdiction shall be determined by this Section, without prejudice to Articles 4 and 5(5).

### Article 9

1.  An insurer domiciled in a State bound by this Convention may be sued:

(a)  in the courts of the State where he is domiciled; or

(b)  in another State bound by this Convention, in the case of actions brought by the policyholder, the insured or a beneficiary, in the courts for the place where the plaintiff is domiciled; or

(c)  if he is a co-insurer, in the courts of a State bound by this Convention in which proceedings are brought against the leading insurer.

2.  An insurer who is not domiciled in a State bound by this Convention but has a branch, agency or other establishment in one of the States bound by this Convention shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.

### Article 10

In respect of liability insurance or insurance of immovable property, the insurer may in addition be sued in the courts for the place where the harmful event occurred. The same applies if movable and immovable property are covered by the same insurance policy and both are adversely affected by the same contingency.

### Article 11

1.  In respect of liability insurance, the insurer may also, if the law of the court permits it, be joined in proceedings which the injured party has brought against the insured.

2.  Articles 8, 9 and 10 shall apply to actions brought by the injured party directly against the insurer, where such direct actions are permitted.

3.  If the law governing such direct actions provides that the policyholder or the insured may be joined as a party to the action, the same court shall have jurisdiction over them.

*Article 12*

1.   Without prejudice to Article 11(3), an insurer may bring proceedings only in the courts of the State bound by this Convention in which the defendant is domiciled, irrespective of whether he is the policyholder, the insured or a beneficiary.

2.   The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

*Article 13*

The provisions of this Section may be departed from only by an agreement:

1.   which is entered into after the dispute has arisen; or

2.   which allows the policyholder, the insured or a beneficiary to bring proceedings in courts other than those indicated in this Section; or

3.   which is concluded between a policyholder and an insurer, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same State bound by this Convention, and which has the effect of conferring jurisdiction on the courts of that State even if the harmful event were to occur abroad, provided that such an agreement is not contrary to the law of that State; or

4.   which is concluded with a policyholder who is not domiciled in a State bound by this Convention, except insofar as the insurance is compulsory or relates to immovable property in a State bound by this Convention; or

5.   which relates to a contract of insurance insofar as it covers one or more of the risks set out in Article 14.

*Article 14*

The following are the risks referred to in Article 13(5):

1.   any loss of or damage to:

    (a)   seagoing ships, installations situated offshore or on the high seas, or aircraft, arising from perils which relate to their use for commercial purposes;

    (b)   goods in transit, other than passengers' baggage, where the transit consists of or includes carriage by such ships or aircraft;

2.   any liability, other than for bodily injury to passengers or loss of or damage to their baggage:

    (a)   arising out of the use or operation of ships, installations or aircraft as referred to in point 1(a) insofar as, in respect of the latter, the law of the State bound by this Convention in which such aircraft are registered does not prohibit agreements on jurisdiction regarding insurance of such risks;

    (b)   for loss or damage caused by goods in transit as described in point 1(b);

3.   any financial loss connected with the use or operation of ships, installations or aircraft as referred to in point 1(a), in particular loss of freight or charter-hire;

L 339/8      EN      Official Journal of the European Union      21.12.2007

4.   any risk or interest connected with any of those referred to in points 1 to 3;

5.   notwithstanding points 1 to 4, all large risks.

*SECTION 4*

## Jurisdiction over consumer contracts

*Article 15*

1.   In matters relating to a contract concluded by a person, the consumer, for a purpose which can be regarded as being outside his trade or profession, jurisdiction shall be determined by this Section, without prejudice to Articles 4 and 5(5), if:

(a)   it is a contract for the sale of goods on instalment credit terms; or

(b)   it is a contract for a loan repayable by instalments, or for any other form of credit, made to finance the sale of goods; or

(c)   in all other cases, the contract has been concluded with a person who pursues commercial or professional activities in the State bound by this Convention of the consumer's domicile or, by any means, directs such activities to that State or to several States including that State, and the contract falls within the scope of such activities.

2.   Where a consumer enters into a contract with a party who is not domiciled in the State bound by this Convention but has a branch, agency or other establishment in one of the States bound by this Convention, that party shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.

3.   This section shall not apply to a contract of transport other than a contract which, for an inclusive price, provides for a combination of travel and accommodation.

*Article 16*

1.   A consumer may bring proceedings against the other party to a contract either in the courts of the State bound by this Convention in which that party is domiciled or in the courts for the place where the consumer is domiciled.

2.   Proceedings may be brought against a consumer by the other party to the contract only in the courts of the State bound by this Convention in which the consumer is domiciled.

3.   This Article shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

*Article 17*

The provisions of this Section may be departed from only by an agreement:

1.   which is entered into after the dispute has arisen; or

2.   which allows the consumer to bring proceedings in courts other than those indicated in this Section; or

3.   which is entered into by the consumer and the other party to the contract, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same State bound by this Convention, and which confers jurisdiction on the courts of that State, provided that such an agreement is not contrary to the law of that State.

SECTION 5

### Jurisdiction over individual contracts of employment

*Article 18*

1.   In matters relating to individual contracts of employment, jurisdiction shall be determined by this Section, without prejudice to Articles 4 and 5(5).

2.   Where an employee enters into an individual contract of employment with an employer who is not domiciled in a State bound by this Convention but has a branch, agency or other establishment in one of the States bound by this Convention, the employer shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.

*Article 19*

An employer domiciled in a State bound by this Convention may be sued:

1.   in the courts of the State where he is domiciled; or

2.   in another State bound by this Convention:

    (a)  in the courts for the place where the employee habitually carries out his work or in the courts for the last place where he did so; or

    (b)  if the employee does not or did not habitually carry out his work in any one country, in the courts for the place where the business which engaged the employee is or was situated.

*Article 20*

1.   An employer may bring proceedings only in the courts of the State bound by this Convention in which the employee is domiciled.

2.   The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

*Article 21*

The provisions of this Section may be departed from only by an agreement on jurisdiction:

1.   which is entered into after the dispute has arisen; or

2.   which allows the employee to bring proceedings in courts other than those indicated in this Section.

SECTION 6

### Exclusive jurisdiction

*Article 22*

The following courts shall have exclusive jurisdiction, regardless of domicile:

1.   in proceedings which have as their object rights *in rem* in immovable property or tenancies of immovable property, the courts of the State bound by this Convention in which the property is situated.

    However, in proceedings which have as their object tenancies of immovable property concluded for temporary private use for a maximum period of six consecutive months, the courts of the State bound by this Convention in which the defendant is domiciled shall also have jurisdiction, provided that the tenant is a natural person and that the landlord and the tenant are domiciled in the same State bound by this Convention;

L 339/10 | EN | Official Journal of the European Union | 21.12.2007

2. in proceedings which have as their object the validity of the constitution, the nullity or the dissolution of companies or other legal persons or associations of natural or legal persons, or of the validity of the decisions of their organs, the courts of the State bound by this Convention in which the company, legal person or association has its seat. In order to determine that seat, the court shall apply its rules of private international law;

3. in proceedings which have as their object the validity of entries in public registers, the courts of the State bound by this Convention in which the register is kept;

4. in proceedings concerned with the registration or validity of patents, trade marks, designs, or other similar rights required to be deposited or registered, irrespective of whether the issue is raised by way of an action or as a defence, the courts of the State bound by this Convention in which the deposit or registration has been applied for, has taken place or is, under the terms of a Community instrument or an international convention, deemed to have taken place.

Without prejudice to the jurisdiction of the European Patent Office under the Convention on the grant of European patents, signed at Munich on 5 October 1973, the courts of each State bound by this Convention shall have exclusive jurisdiction, regardless of domicile, in proceedings concerned with the registration or validity of any European patent granted for that State irrespective of whether the issue is raised by way of an action or as a defence;

5. in proceedings concerned with the enforcement of judgments, the courts of the State bound by this Convention in which the judgment has been or is to be enforced.

*SECTION 7*

**Prorogation of jurisdiction**

*Article 23*

1. If the parties, one or more of whom is domiciled in a State bound by this Convention, have agreed that a court or the courts of a State bound by this Convention are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

(a) in writing or evidenced in writing; or

(b) in a form which accords with practices which the parties have established between themselves; or

(c) in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.

2. Any communication by electronic means which provides a durable record of the agreement shall be equivalent to 'writing'.

3. Where such an agreement is concluded by parties, none of whom is domiciled in a State bound by this Convention, the courts of other States bound by this Convention shall have no jurisdiction over their disputes unless the court or courts chosen have declined jurisdiction.

4. The court or courts of a State bound by this Convention on which a trust instrument has conferred jurisdiction shall have exclusive jurisdiction in any proceedings brought against a settlor, trustee or beneficiary, if relations between these persons or their rights or obligations under the trust are involved.

5. Agreements or provisions of a trust instrument conferring jurisdiction shall have no legal force if they are contrary to the provisions of Articles 13, 17 or 21, or if the courts whose jurisdiction they purport to exclude have exclusive jurisdiction by virtue of Article 22.

*Article 24*

Apart from jurisdiction derived from other provisions of this Convention, a court of a State bound by this Convention before which a defendant enters an appearance shall have jurisdiction. This rule shall not apply where appearance was entered to contest the jurisdiction, or where another court has exclusive jurisdiction by virtue of Article 22.

SECTION 8

**Examination as to jurisdiction and admissibility**

*Article 25*

Where a court of a State bound by this Convention is seised of a claim which is principally concerned with a matter over which the courts of another State bound by this Convention have exclusive jurisdiction by virtue of Article 22, it shall declare of its own motion that it has no jurisdiction.

*Article 26*

1.   Where a defendant domiciled in one State bound by this Convention is sued in a court of another State bound by this Convention and does not enter an appearance, the court shall declare of its own motion that it has no jurisdiction unless its jurisdiction is derived from the provisions of this Convention.

2.   The court shall stay the proceedings so long as it is not shown that the defendant has been able to receive the document instituting the proceedings or an equivalent document in sufficient time to enable him to arrange for his defence, or that all necessary steps have been taken to this end.

3.   Instead of the provisions of paragraph 2, Article 15 of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial matters shall apply if the document instituting the proceedings or an equivalent document had to be transmitted pursuant to that Convention.

4.   Member States of the European Community bound by Council Regulation (EC) No 1348/2000 of 29 May 2000 or by the Agreement between the European Community and the Kingdom of Denmark on the service of judicial and extrajudicial documents in civil or commercial matters, signed at Brussels on 19 October 2005, shall apply in their mutual relations the provision in Article 19 of that Regulation if the document instituting the proceedings or an equivalent document had to be transmitted pursuant to that Regulation or that Agreement.

SECTION 9

**Lis pendens — related actions**

*Article 27*

1.   Where proceedings involving the same cause of action and between the same parties are brought in the courts of different States bound by this Convention, any court other than the court first seised shall of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established.

2.   Where the jurisdiction of the court first seised is established, any court other than the court first seised shall decline jurisdiction in favour of that court.

*Article 28*

1.   Where related actions are pending in the courts of different States bound by this Convention, any court other than the court first seised may stay its proceedings.

2.   Where these actions are pending at first instance, any court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the court first seised has jurisdiction over the actions in question and its law permits the consolidation thereof.

3.   For the purposes of this Article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

L 339/12    EN    Official Journal of the European Union    21.12.2007

*Article 29*

Where actions come within the exclusive jurisdiction of several courts, any court other than the court first seised shall decline jurisdiction in favour of that court.

*Article 30*

For the purposes of this Section, a court shall be deemed to be seised:

1. at the time when the document instituting the proceedings or an equivalent document is lodged with the court, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have service effected on the defendant; or

2. if the document has to be served before being lodged with the court at the time when it is received by the authority responsible for service, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have the document lodged with the court.

### SECTION 10

### Provisional, including protective, measures

*Article 31*

Application may be made to the courts of a State bound by this Convention for such provisional, including protective, measures as may be available under the law of that State, even if, under this Convention, the courts of another State bound by this Convention have jurisdiction as to the substance of the matter.

### TITLE III

### RECOGNITION AND ENFORCEMENT

*Article 32*

For the purposes of this Convention, 'judgment' means any judgment given by a court or tribunal of a State bound by this Convention, whatever the judgment may be called, including a decree, order, decision or writ of execution, as well as the determination of costs or expenses by an officer of the court.

### SECTION 1

### Recognition

*Article 33*

1. A judgment given in a State bound by this Convention shall be recognised in the other States bound by this Convention without any special procedure being required.

2. Any interested party who raises the recognition of a judgment as the principal issue in a dispute may, in accordance with the procedures provided for in Sections 2 and 3 of this Title, apply for a decision that the judgment be recognised.

3. If the outcome of proceedings in a court of a State bound by this Convention depends on the determination of an incidental question of recognition that court shall have jurisdiction over that question.

*Article 34*

A judgment shall not be recognised:

1. if such recognition is manifestly contrary to public policy in the State in which recognition is sought;

2. where it was given in default of appearance, if the defendant was not served with the document which instituted the proceedings or with an equivalent document in sufficient time and in such a way as to enable him to arrange for his defence, unless the defendant failed to commence proceedings to challenge the judgment when it was possible for him to do so;

3. if it is irreconcilable with a judgment given in a dispute between the same parties in the State in which

4.   if it is irreconcilable with an earlier judgment given in another State bound by this Convention or in a third State involving the same cause of action and between the same parties, provided that the earlier judgment fulfils the conditions necessary for its recognition in the State addressed.

*Article 35*

1.   Moreover, a judgment shall not be recognised if it conflicts with Sections 3, 4 or 6 of Title II, or in a case provided for in Article 68. A judgment may furthermore be refused recognition in any case provided for in Article 64(3) or 67(4).

2.   In its examination of the grounds of jurisdiction referred to in the foregoing paragraph, the court or authority applied to shall be bound by the findings of fact on which the court of the State of origin based its jurisdiction.

3.   Subject to the provisions of paragraph 1, the jurisdiction of the court of the State of origin may not be reviewed. The test of public policy referred to in Article 34(1) may not be applied to the rules relating to jurisdiction.

*Article 36*

Under no circumstances may a foreign judgment be reviewed as to its substance.

*Article 37*

1.   A court of a State bound by this Convention in which recognition is sought of a judgment given in another State bound by this Convention may stay the proceedings if an ordinary appeal against the judgment has been lodged.

2.   A court of a State bound by this Convention in which recognition is sought of a judgment given in Ireland or the United Kingdom may stay the proceedings if enforcement is suspended in the State of origin, by reason of an appeal.

SECTION 2

**Enforcement**

*Article 38*

1.   A judgment given in a State bound by this Convention and enforceable in that State shall be enforced in another State bound by this Convention when, on the application of any interested party, it has been declared enforceable there.

2.   However, in the United Kingdom, such a judgment shall be enforced in England and Wales, in Scotland, or in Northern Ireland when, on the application of any interested party, it has been registered for enforcement in that part of the United Kingdom.

*Article 39*

1.   The application shall be submitted to the court or competent authority indicated in the list in Annex II.

2.   The local jurisdiction shall be determined by reference to the place of domicile of the party against whom enforcement is sought, or to the place of enforcement.

*Article 40*

1.   The procedure for making the application shall be governed by the law of the State in which enforcement is sought.

2.   The applicant must give an address for service of process within the area of jurisdiction of the court applied to. However, if the law of the State in which enforcement is sought does not provide for the furnishing of such an address, the applicant shall appoint a representative *ad litem*.

3.   The documents referred to in Article 53 shall be attached to the application.

*Article 41*

The judgment shall be declared enforceable immediately on completion of the formalities in Article 53 without any review under Articles 34 and 35. The party against whom enforcement is sought shall not at this stage of the proceedings be entitled to make any submissions on the application.

*Article 42*

1.   The decision on the application for a declaration of enforceability shall forthwith be brought to the notice of the applicant in accordance with the procedure laid down by the law of the State in which enforcement is sought.

2.   The declaration of enforceability shall be served on the party against whom enforcement is sought, accompanied by the judgment, if not already served on that party.

*Article 43*

1.   The decision on the application for a declaration of enforceability may be appealed against by either party.

2.   The appeal is to be lodged with the court indicated in the list in Annex III.

3.   The appeal shall be dealt with in accordance with the rules governing procedure in contradictory matters.

4.   If the party against whom enforcement is sought fails to appear before the appellate court in proceedings concerning an appeal brought by the applicant, Article 26(2) to (4) shall apply even where the party against whom enforcement is sought is not domiciled in any of the States bound by this Convention.

5.   An appeal against the declaration of enforceability is to be lodged within one month of service thereof. If the party against whom enforcement is sought is domiciled in a State bound by this Convention other than that in which the declaration of enforceability was given, the time for appealing shall be two months and shall run from the date of service, either on him in person or at his residence. No extension of time may be granted on account of distance.

*Article 44*

The judgment given on the appeal may be contested only by the appeal referred to in Annex IV.

*Article 45*

1.   The court with which an appeal is lodged under Article 43 or Article 44 shall refuse or revoke a declaration of enforceability only on one of the grounds specified in Articles 34 and 35. It shall give its decision without delay.

2.   Under no circumstances may the foreign judgment be reviewed as to its substance.

*Article 46*

1.   The court with which an appeal is lodged under Article 43 or Article 44 may, on the application of the party against whom enforcement is sought, stay the proceedings if an ordinary appeal has been lodged against the judgment in the State of origin or if the time for such an appeal has not yet expired; in the latter case, the court may specify the time within which such an appeal is to be lodged.

2.   Where the judgment was given in Ireland or the United Kingdom, any form of appeal available in the State of origin shall be treated as an ordinary appeal for the purposes of paragraph 1.

3.   The court may also make enforcement conditional on the provision of such security as it shall determine.

*Article 47*

1.    When a judgment must be recognised in accordance with this Convention, nothing shall prevent the applicant from availing himself of provisional, including protective, measures in accordance with the law of the State requested without a declaration of enforceability under Article 41 being required.

2.    The declaration of enforceability shall carry with it the power to proceed to any protective measures.

3.    During the time specified for an appeal pursuant to Article 43(5) against the declaration of enforceability and until any such appeal has been determined, no measures of enforcement may be taken other than protective measures against the property of the party against whom enforcement is sought.

*Article 48*

1.    Where a foreign judgment has been given in respect of several matters and the declaration of enforceability cannot be given for all of them, the court or competent authority shall give it for one or more of them.

2.    An applicant may request a declaration of enforceability limited to parts of a judgment.

*Article 49*

A foreign judgment which orders a periodic payment by way of a penalty shall be enforceable in the State in which enforcement is sought only if the amount of the payment has been finally determined by the courts of the State of origin.

*Article 50*

1.    An applicant who in the State of origin has benefited from complete or partial legal aid or exemption from costs or expenses shall be entitled, in the procedure provided for in this Section, to benefit from the most favourable legal aid or the most extensive exemption from costs or expenses provided for by the law of the State addressed.

2.    However, an applicant who requests the enforcement of a decision given by an administrative authority in Denmark, in Iceland or in Norway in respect of maintenance may, in the State addressed, claim the benefits referred to in paragraph 1 if he presents a statement from the Danish, Icelandic, or Norwegian Ministry of Justice to the effect that he fulfils the economic requirements to qualify for the grant of complete or partial legal aid or exemption from costs or expenses.

*Article 51*

No security, bond or deposit, however described, shall be required of a party who in one State bound by this Convention, applies for enforcement of a judgment given in another State bound by this Convention on the ground that he is a foreign national or that he is not domiciled or resident in the State in which enforcement is sought.

*Article 52*

In proceedings for the issue of a declaration of enforceability, no charge, duty or fee calculated by reference to the value of the matter at issue may be levied in the State in which enforcement is sought.

*SECTION 3*

**Common provisions**

*Article 53*

1.    A party seeking recognition or applying for a declaration of enforceability shall produce a copy of the judgment which satisfies the conditions necessary to establish its authenticity.

2.    A party applying for a declaration of enforceability shall also produce the certificate referred to in Article 54, without prejudice to Article 55.